IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROOFPOINT, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| ZAPFRAUD, INC. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## DECLARATORY JUDGMENT COMPLAINT

Plaintiff Proofpoint, Inc. ("Proofpoint") files this Declaratory Judgment Complaint against Defendant ZapFraud, Inc. ("ZapFraud"). Each of the following allegations in this Declaratory Judgment Complaint either has evidentiary support based on public information available to Proofpoint or disclosures from ZapFraud, or it is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## NATURE OF THE ACTION

1.    This action arises from ZapFraud's efforts to enforce U.S. Patent No. 9,245,115, entitled "Determining risk exposure and avoiding fraud using a collection of terms" (the "Patent-in-Suit"). Proofpoint asserts a claim for declaratory judgment of non-infringement of the Patent-in-Suit. This is a declaratory judgment action by Proofpoint seeking a determination that it does not infringe any claim of the Patent-in-Suit.

## PARTIES

2.    Defendant ZapFraud is a Delaware corporation with its principal place of business at 118 Ramona Rd., Portola Valley, CA 94028.

3. Plaintiff Proofpoint is a Delaware corporation, with its principal place of business at 925 West Maude Ave., Sunnyvale, CA 94085.

4. Proofpoint is an industry-leading provider of products and services that protect against cyberattacks that target people, data, and brands.

## JURISDICTION AND VENUE

5. This is a complaint for declaratory relief under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Subject matter jurisdiction is thus proper based at least upon 28 U.S.C. §§ 1331 and 1338(a), as well as under 28 U.S.C. § 1367.

6. This Court has general personal jurisdiction over ZapFraud because it is incorporated in this District. Moreover, ZapFraud has purposefully directed allegations of patent infringement to Proofpoint, which is also incorporated in this District, by sending a patent assertion letter alleging that Proofpoint infringes one or more claims of the Patent-in-Suit.

7. ZapFraud has previously sued Proofpoint in this District alleging infringement of claims in U.S. Patent Nos. 10,277,628 (the "'628 Patent") and 10,609,073 (the "'073 Patent") and accusing the same products and services. *ZapFraud, Inc. v. Proofpoint, Inc.*, No. 19-1691-CFC (filed Sep. 10, 2019). Judge Colm F. Connolly recently found the claims in both patents asserted in the prior suit (which have essentially the same scope as the claims in the Patent-in-Suit) invalid as directed to ineligible subject matter under 35 U.S.C § 101 and dismissed ZapFraud's operative complaint. D.I. 49, No. 19-1691-CFC (Mar. 25, 2021).

8. Because the Court can exercise personal jurisdiction over ZapFraud in this District, venue is also proper pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

## FACTUAL ALLEGATIONS

## PATENT-IN-SUIT

9.     The Patent-in-Suit states on its cover that it was issued on January 26, 2016, and names as inventor Bjorn Markus Jakobsson of Mountain View, California. The Patent-in-Suit also states that the assignee is ZapFraud, Inc. of Portola Valley, California. A copy of the Patent-in-Suit is attached hereto as Exhibit A.

## ZAPFRAUD'S FIRST TWO MERITLESS ASSERTIONS

10.     ZapFraud's attempt to enforce the Patent-in-Suit against Proofpoint is the third in a series of assertions involving facially weak patents based on tenuous infringement allegations that in sum appear to be nothing more than an effort to extract a nuisance settlement from Proofpoint by the threat of never-ending serial litigation.

11.     On September 10, 2019, ZapFraud filed a Complaint against Proofpoint in this District alleging infringement of one or more claims in the '628 Patent and accusing "Proofpoint's email security products and services such as Proofpoint Email Protection, Email Fraud Defense, and Proofpoint Essential." D.I. 1 ¶ 28, No. 1-19-cv-01691. ZapFraud described the accused functionality in the '628 Patent as a "classification system (such as Proofpoint Email Protection) for detecting attempted deception in an electronic communication (such as an incoming email)." *Id.* at ¶¶ 29, 30 ("Proofpoint infringes claim 1 of the '628 patent under 35 U.S.C. § 271(a) by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States such a classification system.").

12.     ZapFraud filed a First Amended Complaint on October 17, 2019 (D.I. 10, No. 1-19-cv-01691), and Proofpoint filed a Motion to Dismiss for Failure to State a Claim on

December 3, 2019, asserting that the claims in the '628 Patent were directed to ineligible subject matter under 35 U.S.C. § 101 (D.I. 12, No. 1-19-cv-01691).

13.      After Proofpoint's Motion to Dismiss the '628 Patent allegations was fully briefed and pending, ZapFraud filed a Second Amended Complaint on April 24, 2020, adding allegations that the same accused products and services infringe the '073 Patent. D.I. 29, No. 1-19-cv-01691. Just like its description of the accused functionality for the '628 patent, ZapFraud described the accused functionality for the '073 Patent as a "classification system (such as Proofpoint Email Protection) for detecting attempted deception in an electronic communication (such as an incoming email)." *Id.*, ¶¶ 46, 47 ("Proofpoint infringes at least claim 1 of the '073 patent under 35 U.S.C. § 271(a) by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States such a classification system."). Proofpoint supplemented its Motion to Dismiss on May 22, 2020, to address why the similar claims in the '073 Patent were likewise directed to the same ineligible subject matter. D.I. 31, No. 1-19-cv-01691.

14.      Magistrate Judge Christopher J. Burke heard arguments from ZapFraud and Proofpoint on the Motion to Dismiss on September 24, 2020. D.I. 43, No. 1-19-cv-01691. Based on the arguments and briefs, Magistrate Judge Burke recommended granting Proofpoint's Motion to Dismiss because the claims in the '628 Patent and the '073 Patent were directed to ineligible subject matter under 35 U.S.C. § 101. D.I. 44, No. 1-19-cv-01691. Judge Connolly issued an Order on March 25, 2021, adopting Magistrate Judge Burke's recommendations and accordingly dismissing ZapFraud's Second Amended Complaint because the '628 Patent and the '073 Patent were directed to ineligible subject matter. D.I. 49, No. 1-19-cv-01691.

15.      In Judge Connolly's Order adopting Magistrate Judge Burke's recommendations, Judge Connolly agreed that the '628 Patent and the '073 Patent "are directed to the abstract idea

of identifying deceptive messages that appeared to be from a trustworthy source and taking action accordingly." *Id.* at 2. He further agreed that ZapFraud's alleged inventive concepts "are nothing more [than] applications of the claimed abstract idea—i.e., identifying deceptive messages that appear to be from a trustworthy source and taking action accordingly—using conventional and well-understood techniques." *Id.* at 3–4.

## ZAPFRAUD'S THIRD MERITLESS ASSERTION

16.    Despite the originally asserted '628 Patent and the later asserted '073 patent being found patent ineligible, ZapFraud has now threatened Proofpoint with a third patent, the Patent-in-Suit. On May 21, 2021, ZapFraud sent Proofpoint a letter purporting that "ZapFraud has been studying its patent portfolio, as well as specific Proofpoint product offerings," and stating "ZapFraud believes that Proofpoint uses functionality covered by certain ZapFraud patents, and requires a patent license from ZapFraud." Exhibit B at 1.

17.    More specifically, ZapFraud's May 21 letter alleges that "Proofpoint infringes claim 1 of the U.S. Patent No. 9,245,115 … by providing email security products and services, such as Proofpoint Email Protection, that classify received electronic communications based at least in part on evaluating the content of the aforementioned electronic communications." *Id.*

18.    The above allegation mirrors ZapFraud's allegations in the prior suit that the same accused products infringed the '628 Patent and the '073 Patent by incorporating a "classification system (such as Proofpoint Email Protection) for detecting attempted deception in an electronic communication (such as an incoming email)." *See, e.g.*, D.I. 29, No. 1-19-cv-01691, ¶¶ 46-47.

19.     Despite the Patent-in-Suit having issued years before ZapFraud filed its prior patent infringement action against Proofpoint based on the same accused products and the same

accused functionality, ZapFraud's letter does not provide any reason it could not have raised the alleged infringement of the Patent-in-Suit in the prior litigation.

## COUNT I

## DECLARATION REGARDING NON-INFRINGEMENT OF THE PATENT-IN-SUIT

20.      Proofpoint incorporates by reference the allegations of the above paragraphs as though fully set forth herein.

21.      As a result of the acts described above, including ZapFraud's prior infringement suit against Proofpoint involving the same products and functionality, and ZapFraud's specific allegation in its May 21, 2021 letter that Proofpoint infringes one or more claims in the Patent-in-Suit, there exists an actual and justiciable controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Proofpoint has not infringed and does not infringe any claim of the Patent-in-Suit.

22.      ZapFraud has asserted and continues to assert that allegedly infringing Proofpoint products and services are sold and offered for sale in the United States and that Proofpoint induces others to perform infringing acts in the United States. In particular, ZapFraud has alleged that the Proofpoint's accused products and services infringe at least claim 1 of the Patent-in-Suit.

23.      The Patent-in-Suit purports to describe "determining risk exposure and avoiding fraud using a collection of terms." *See* Patent-in-Suit at Title. Independent claim 1 of the Patent-in-Suit is exemplary of the other independent claims and recites the following:

A system, comprising:

   a processor configured to:
         receive an electronic communication;
         obtain, from a data store, a first collection of terms, wherein:
               the first collection of terms corresponds to a first attack strategy;

the first attack strategy is associated with a plurality of narrative points, wherein the plurality of narrative points comprises a plurality of equivalence classes;

each narrative point of the first attack strategy is associated with a corresponding group of terms representative of the narrative point;

the groups of terms corresponding to the narrative points collectively comprise the first collection of terms; and

a second attack strategy that is different from the first attack strategy is associated with a second collection of terms;

evaluate the received communication to determine whether the received communication is indicative of the first attack strategy, wherein the evaluating includes:

for each narrative point of the first attack strategy, determining whether the received communication includes the presence of one or more terms matching to the group of terms corresponding to the narrative point;

determining whether the received communication includes the presence of terms matching to a threshold number of narrative points; and

determining whether terms present in the communication that match to the narrative points of the first attack strategy occur in a particular order; and

classify the received communication based at least in part on the evaluation;

and a memory coupled to the processor and configured to provide the processor with instructions.

24.    The Patent-in-Suit's independent claims 19 and 20 respectively recite a method and computer programming product incorporating substantively the same limitations as in claim 1.

25.    Proofpoint has not infringed and does not infringe any claim of the Patent-in-Suit directly or indirectly, literally or under the doctrine of equivalents, through the importation, manufacture, use, sale, and/or offer for sale of the accused products. Proofpoint does not indirectly infringe any claim of the Patent-in-Suit at least because there is no direct infringement.

26.    The claims in the Patent-in-Suit are largely indecipherable and contain numerous terms that have no meaning in the art and that are not defined or explained in the specification or

in the prosecution file history. But based on Proofpoint's current understanding of the potential meaning of the claims in the Patent-in-Suit, the accused products do not satisfy various limitations in the independent claims because, for example, the accused products and services do not include the claimed concepts of: associating an attack strategy with narrative points comprising a plurality of equivalence classes; associating groups of terms with an attack strategy; evaluating electronic communications based on whether they contain a threshold number of narrative points; or determining whether terms present in the communication that match to the narrative points of an attack occur in a particular order, among others. Accordingly, the accused products and services do not infringe independent claims 1, 19, or 20 of the Patent-in-Suit and thus cannot infringe any dependent claims for the same reasons.

27.    Proofpoint is therefore entitled to a judgment declaring that it has not infringed and is not infringing any claim of the Patent-in-Suit.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38 and Civil Local Rule 3-6, Proofpoint hereby demands a jury trial on all issues so triable.

## RELIEF REQUESTED

Proofpoint therefore asks this Court to enter judgment in Proofpoint's favor and against ZapFraud by granting the following relief:

a)    a declaration that Proofpoint does not infringe and has not infringed, under any theory of infringement, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement), any claim of the Patent-in-Suit;

b)    a permanent injunction restraining ZapFraud, and its officers, agents, servants, employees, attorneys, and any other persons acting on their behalf or in concert with

them, from charging or threatening, orally or in writing, that the Patent-in-Suit has been infringed

by Proofpoint under any subsection of 35 U.S.C. § 271; and

c) an award to Proofpoint of its reasonable attorneys' fees, costs, and all interest

(including without limitation any attorney fees awards based upon 35 U.S.C. § 285), and any such

other and further relief as the Court finds just and proper.

<table>
<tr><td></td><td><i>/s/ Karen E. Keller</i></td></tr>
<tr><td></td><td>Karen E. Keller (No. 4489)</td></tr>
<tr><td></td><td>David M. Fry (No. 5486)</td></tr>
<tr><td></td><td>Nathan R. Hoeschen (No. 6232)</td></tr>
<tr><td></td><td>SHAW KELLER LLP</td></tr>
<tr><td></td><td>I.M. Pei Building</td></tr>
<tr><td></td><td>1105 North Market Street, 12th Floor</td></tr>
<tr><td>OF COUNSEL:</td><td>Wilmington, DE 19801</td></tr>
<tr><td>Katherine Vidal</td><td>(302) 298-0700</td></tr>
<tr><td>Michael Rueckheim</td><td>kkeller@shawkeller.com</td></tr>
<tr><td>WINSTON & STRAWN LLP</td><td>dfry@shawkeller.com</td></tr>
<tr><td>275 Middlefield Road, Suite 205</td><td>nhoeschen@shawkeller.com</td></tr>
<tr><td>Menlo Park, CA 94025</td><td><i>Attorneys for Plaintiff</i></td></tr>
<tr><td>Telephone: (650) 858-6500</td><td></td></tr>
</table>

William M. Logan
WINSTON & STRAWN LLP
1111 Louisiana, 25th Floor
Houston, TX  77002
Telephone: (713) 651-2700

Dated: May 24, 2021